834 So.2d 332 (2003)
Leroy SUTTON, Appellant,
v.
STATE of Florida, Appellee.
No. 5D02-968.
District Court of Appeal of Florida, Fifth District.
January 3, 2003.
*333 James B. Gibson, Public Defender, and Lyle Hitchens, Assistant Public Defender, Daytona Beach, for Appellant.
Richard E. Doran, Attorney General, Tallahassee, and Pamela J. Koller, Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, J.
Leroy Sutton appeals the judgment and sentences imposed following the return of the jury's verdict finding him guilty of one count of kidnapping and one count of aggravated battery. Of the several issues raised by Sutton, the only issue that warrants discussion is whether the trial court erred in denying his motion for judgment of acquittal wherein Sutton argued that the movement or confinement of the victim by Sutton was inconsequential and, therefore, insufficient to support the kidnapping charge. We affirm.

The Facts
The charges against Sutton stem from a drug deal gone awry. Although the testimony from the victims, Derek Alford and Derek O'Haver, was self-serving and conflicting, we discern from the record that Alford and O'Haver were attempting to negotiate the selling price of cocaine with Sutton and his two associates. When Sutton became dissatisfied with the negotiations, he pulled a knife, positioned it on O'Haver's neck, and proclaimed that "we're going to do it this way." O'Haver was bound and gagged, placed on a couch, and relieved of his money. Alford retreated to the kitchen where he attempted to summon help from the neighbors by kicking the wall and yelling, "Help, they're trying to kill us." A fight subsequently ensued between Alford and Sutton's two associates. Alford was kicked, punched, and cut with a knife. Undaunted, Alford persisted with his ill-fated defense until he was hit over the head with a lamp which, according to the testimony, quieted him down. At this point, Alford was bound, gagged, and dispossessed of his money.
In the meantime, a concerned neighbor, who apparently had heard Alford's plea for help, summoned the police. When the police arrived, one of the officers peered through the window and observed Sutton standing over the subdued O'Haver. The police knocked on the door and announced their presence. Several minutes passed without a response. During that interval, Sutton and his associates hatched a scheme whereby they planned to tell the police that they were all friends and were just playing around. To set their plan into motion, Sutton dragged the vanquished Alford into the bathroom. Meanwhile, the two associates freed O'Haver from his bonds and instructed him to answer the door and explain to the police that he and his friends were just wrestling or he would be killed. When O'Haver opened the door, the police ordered O'Haver, Sutton, and his two associates out of the apartment. Any hope Sutton may have had that the police would consider his story as even remotely plausible completely vanished when the officers, upon hearing a plaintive cry emanate from inside, re-entered the apartment to the specter of Alford crawling on his hands and knees from the bathroom with duct tape hanging around his *334 neck, bleeding from his various wounds, and exclaiming, "They're trying to kill us."
Needless to say, all the participants were arrested and a subsequent search of the apartment revealed packaged cocaine and drug paraphernalia. The drug charges against Alford and O'Haver were dropped in exchange for their testimony against Sutton and his two associates. Sutton was tried and found guilty of kidnapping and aggravated assault. He received a life sentence as a prison releasee reoffender for the kidnapping conviction and fifteen years in prison for the aggravated assault conviction. Sutton appeals the trial court's denial of his motion for judgment of acquittal.

Standard of Review
The de novo standard of review is applied when reviewing a trial court's denial of a motion for judgment of acquittal. Pagan v. State, 830 So.2d 792 (Fla. 2002). This court has repeatedly held that a motion for judgment of acquittal should be denied if the state presents competent evidence to establish each element of the offense. L.C. v. State, 799 So.2d 330 (Fla. 5th DCA 2001); Espiet v. State, 797 So.2d 598 (Fla. 5th DCA 2001); V.L. v. State, 790 So.2d 1140 (Fla. 5th DCA 2001). A motion for judgment of acquittal may be granted if the evidence, viewed in a light most favorable to the state, fails to establish a prima facie case of guilt. L.C.; Espiet; V.L. In moving for a judgment of acquittal, a defendant admits not only the facts stated in the evidence, but also every reasonable conclusion favorable to the state that the trier of fact might fairly infer from the evidence. Lynch v. State, 293 So.2d 44 (Fla.1974); Espiet; A.L. v. State, 790 So.2d 1149 (Fla. 2d DCA 2001). It is the trial judge's duty to review the evidence to determine the presence or absence of competent evidence from which the trier of fact could infer guilt to the exclusion of all other reasonable inferences. A.L. "If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction." Pagan, 830 So.2d at 803 (citing Banks v. State, 732 So.2d 1065 (Fla. 1999)).

Analysis
Sutton argues, based on Faison v. State, 426 So.2d 963 (Fla.1983), that his involvement in confining or moving Alford was inconsequential and, therefore, insufficient to support a conviction for kidnapping. In Faison, the defendant was charged under section 787.01(1)(a)2., Florida Statutes, which provides that "`[k]idnapping' means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to ... [c]ommit or facilitate commission of any felony." In interpreting this statute, the court held that it does not encompass "movement or confinement that is inconsequential or inherent in the nature of the felony." Faison, 426 So.2d at 966 (quoting Harkins v. State, 380 So.2d 524, 528 (Fla. 5th DCA 1980)).
The problem with Sutton's argument is that he was not charged under section 787.01(1)(a)2. Rather, he was charged under section 787.01(1)(a)3., which requires that the victim be confined against her or his will with the intent to "[i]nflict bodily harm upon or to terrorize the victim or another person." The standard adopted in Faison does not apply to offenses charged under section 787.01(1)(a)3. Waddell v. State, 696 So.2d 1229, 1229-30 (Fla. 3d DCA 1997) (noting that "Faison adopted a test only for a determination of whether a kidnapping had taken place with the intent to commit a felony pursuant to section *335 787.01(1)(a)2.," and thus is inapplicable to convictions under section 787.01(1)(a)3.) (footnote omitted) (citing Bedford v. State, 589 So.2d 245, 251 (Fla.1991), cert. denied, 503 U.S. 1009, 112 S.Ct. 1773, 118 L.Ed.2d 432 (1992); Chaeld v. State, 599 So.2d 1362, 1364 (Fla. 1st DCA 1992)), review denied, 707 So.2d 1128 (Fla.1998).
Viewing the evidence in the light most favorable to the State, a rational trier of fact could find, beyond a reasonable doubt, that all of the elements of the crime of kidnapping were proven by the State. Thus, sufficient evidence exists to sustain Sutton's conviction for kidnapping.

Conclusion
We conclude that Sutton's conviction for kidnapping must be affirmed. We also conclude that the other issues raised by Sutton are without merit. Accordingly, we affirm Sutton's convictions and the sentences imposed thereon.
AFFIRMED.
THOMPSON, C.J. and HARRIS, C., Senior Judge, concur.